## Case No. 8,059.

### LANGDON v. DE GROOT et al.

[1 Paine, 203;[1] 1 Robb. Pat. Cas. 433; Merw. Pat. Inv. 203.]

Circuit Court, S. D. New York.   Sept. Term, 1822.

PATENTS — USEFULNESS — WHETHER USEFULNESS MATTER FOR JURY—ORNAMENTAL MODE OF PUTTING UP THREAD.

1. An invention or improvement for which a patent has been obtained, must be useful with-

———

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission. 1 N. Y. Wkly. Dig. 365, contains only a partial report.]

[1] [Reported by Elijah Paine, Jr., Esq.]

in the meaning of the patent law [1 Stat. 318], or the patent is void.

[Cited in Blake v. Smith, Case No. 1,502; Milligan & Higgins Glue Co. v. Upton, Id. 9,607; Reed v. Reed, Id. 11,650.]

[Cited in Dickinson v. Hall, 14 Pick. 219; Rowe v. Blanchard, 18 Wis. 442; Nash v. Lull, 102 Mass. 62.]

2. Whether the usefulness of an invention be matter of fact to be left to the jury, or whether the court are to decide it as matter of law? Quere.

3. But, it seems, that if on the plaintiff's own showing, the invention appears to be useless, and an imposition on the public, the court should so direct the jury.

[Cited in Whitney v. Emmett, Case No. 17,-585.]

4. An invention of an ornamental mode of putting up thread, which gave it no additional value, but merely made it sell more readily at retail, and for a larger price, was *held* not useful, within the meaning of the patent law.

[Cited in Alcott v. Young, Case No. 149; Pratt v. Rosenfeld, 3 Fed. 336; Faulks v. Kamp, Id. 900.]

5. Specification *held* bad for uncertainty.

This was a motion to set aside the verdict in this cause for misdirection of the court. The declaration was for a breach of a patent right. It appeared at the trial, that the plaintiff had obtained letters patent from the president of the United States, for "an improvement in preparing and packing cotton and other threads, and floss cotton for retailing." The specification was as follows:— "This improvement consists in folding the thread and floss cotton into skeins or hanks of a convenient quantity for retailing, with a sealed wrapper round the same, and a label containing the number and description of the article." The court charged the jury, that this invention was not a useful one within the meaning of the patent law, and that the plaintiff was not, of course, entitled to recover any damages for a breach of the patent he had obtained for it.

R. Sedgwick, for plaintiff.

W. Slosson, for defendants.

LIVINGSTON, Circuit Justice. On the trial of this cause the jury gave a verdict for the defendants. A motion is now made to set it aside, for misdirection of the court, in telling the jury that the plaintiff's invention was not a useful one, within the meaning of the patent law. This opinion is not only considered erroneous, but it is said, that the question of utility should have been left to the jury. The opinion of the court, on the point of utility, has undergone no change. To what extent an invention must be useful to render it the subject of a patent, will depend on the particular circumstances of each case, and for which no general rule can be given; but all will agree, that it must in some small measure at least be beneficial to the community; and when it becomes a matter of inquiry whether its benefits are of sufficient consequence to be protected by the arm of government, it may be proper to leave such question with the jury. But when the objection raised is, that the invention, on the plaintiff's own showing, is not only of no use, but an imposition on the public, it may be doubted whether a court transcends its prescribed limits, in taking upon itself, as was done here, a decision of it. If a patent were obtained for a new discovery in the composition of drugs, and it should appear, by the plaintiff's own testimony, that of twenty patients, to whom the medicine had been administered, not one had survived, would a court hesitate in telling a jury that the plaintiff had no right to recover? and if they disregarded such direction, would it find any difficulty in awarding a new trial? Now, although the present invention endangered neither the health nor the lives of others, it was quite palpable, and that without the examination of any witnesses by the defendants, that it was only a mean of obtaining a much larger sum for an article of very extensive use, than it could be purchased for at any other stores in the city. The invention is for folding the thread and floss cotton in a manner a little different from the ordinary mode, in which form the cotton will sell quicker, and higher by 25 per cent. than the same cotton put up in the common way. The cotton thus folded is imported from the factory of Holt, in England. The article itself undergoes no change; and the whole of the improvement,—for it is a patent for an improvement,—consists in putting up skeins of it, perhaps of the same size in which they are imported, decorated with a label and wrapper; thus rendering their appearance somewhat more attractive, and inducing the unwary, not only to give it a preference to other cotton of the same fabric, quality, and texture, but to pay an extravagant premium for it. When stripped of these appendages, which must be done before it is used, the cotton is no better in any one respect than that of Holt's retailed in the way put up by him. All this came out on the plaintiff's own testimony.

Now, that such a contrivance—for with what propriety can it be termed an useful art within the meaning of the constitution? —may be beneficial to a patentee, if he can exclude from the market all other retailers of the very same article, will not be denied; and if to protect the interest of a patentee, however frivolous, useless, or deceptive his invention may be, were the sole object of the law, it must be admitted that the plaintiff has made out a satisfactory title to his patent. But if the utility of an invention is also to be tested by the advantages which the public are to derive from it, it is not perceived how this part of his title is in any way whatever established. Is the cotton manufactured by himself which is put up in this way? The very label declares it to be that of another man. Is any thing done to alter its texture, or to render it better or

more portable, or more convenient for use? Nothing of this kind is pretended. Does the consumer get it for less than in its imported condition? The only ground on which the expectation of a recovery is built is, that he pays an enormous additional price, for which he literally receives no consideration. It was said, that many ornamental things are bought of no intrinsic value, to gratify the whim, taste, or extravagance of a purchaser, and that for many of these articles patents are obtained. This may be so: But in such cases there is no deception, no false appearances; and the article is bought to be used with all its decorations and ornaments, which may have been the principal inducement to the purchase, and which will last as long as the article itself. In this the sight or pride of the party is gratified. But here it is the cotton alone which it is intended to buy, and the little label and wrapper appended to it, and which constitute the whole of the improvement, however showy, are stripped off and thrown away, before it can be used. And when that is done, which may be at the very moment of its purchase, the cotton is no better, whatever the buyer at the time may think, than when it first left the factory. When congress shall pass a law, if they have the right so to do, to encourage discoveries by which an article, without any amelioration of it, may be put off for a great deal more than it is worth, and is actually selling for, it will be time enough for courts to extend their protection to such inventions—among which this may be very fairly classed.

But a complaint is made, that this question should have been submitted to the jury. It may be that the court expressed itself in terms too strong, and should have let the jury pass on this point on the evidence before them; and were this the only difficulty in the cause, I should not object to giving the plaintiffs an opportunity of obtaining such an opinion, by awarding a new trial; being never very desirous of treating mere questions of fact, if this be of that description, as questions of law.

But an objection is made to the specification, which, in the judgment of the court, is conclusive. It is said, and with truth, that it does not appear with sufficient precision, in what respects the method of putting up cotton in the plaintiff's way differs from that followed by Holt. It is certain that in two of the particulars in which the improvement is alleged to consist, Holt had anticipated him; that is, in folding the cotton into skeins of a convenient quantity for retailing, and in putting a label on them. The only remaining direction in the specification is, that these skeins must be furnished with a sealed wrapper. Now, admitting this wrapper to be of the plaintiff's invention, and an improvement on Holt's mode of preparing his cotton for retailing, yet as he has not distinguished between the methods already

in use and his own, but has taken a patent for all of them, it is void, in conformity with the decision in Evans and Eaton. If the patent in its present form be good, he may sue any one who retails cotton put up in the form previously practised by Holt; nor would so trifling a deviation from the specification, as the omission of a wrapper, furnish any defence to such an action; any more than changing the form or proportions of a machine would be regarded a discovery. The rule to, show cause why there should not be a new trial is discharged, and judgment must be entered on the verdict.